UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CR-00015-R

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.

JAMES LAMONTE DUNBAR, et al.                                                      DEFENDANTS

# MEMORANDUM OPINION & ORDER

This matter comes before the Court upon Defendant James LaMonte Dunbar's Motion to Exclude Certain Evidence Disclosed by the United States (DN 572). Government has responded (DN 579). This motion is now ripe for adjudication. For the reasons that follow, Defendant's Motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

Defendant James LaMonte Dunbar was arrested following a lengthy investigation by the Drug Enforcement Administration (DEA) and local law enforcement officers into the sale of crack cocaine in Hopkinsville, Kentucky. He is one of twenty-one defendants named in a five-count indictment. Count One of the Superseding Indictment alleges that Dunbar participated in a conspiracy to possess and distribute fifty grams or more of crack cocaine (violation of 21 U.S.C. §§ 841(b)(1)(A), 846). In this motion, Dunbar moved to exclude the following: (1) audio recordings of intercepted telephone calls, (2) transcripts of the audio recordings, (3) interpretations of the audio recordings, and (4) photographs and video recordings of Dunbar taken during the investigation.

1

At the time this motion was filed, the Court had not been provided the items to which Dunbar was objecting. While denying Dunbar's previous motion, the Court also ordered Government to produce the items implicated by the motion as well as any other similar evidence to be offered at trial so that the Court could conduct an in camera review. Government submitted the items at noon on December 9. The Court has examined the evidence and is now ready to rule on its admissibility.

## STANDARD

Admission of tape recordings into evidence is within this Court's sound discretion. *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983). For admission, the Court must determine that the tapes are "authentic, accurate, and trustworthy" as well as "audible and sufficiently comprehensible for the jury to consider the contents." *Id*. "Recordings will be deemed inadmissible if the 'unintelligible portions are so substantial as to render the recording as a whole untrustworthy.'" *Id*. (quoting *United States v. Jones*, 540 F.2d 465, 470 (10th Cir.), cert. denied, 429 U.S. 1101 (1977).

"As with tape recordings of communications, the use of a transcript of a recorded communication during trial is within the sound discretion of the trial court." *United States v. Wilkinson*, 53 F.3d 757, 761 (6th Cir.1995). However, admission of transcripts of the audio recordings at trial "assumes that the court has predetermined that [any] unintelligible portions of the tape do not render the whole recording untrustworthy." *Robinson*, 707 F.2d at 879. "The Sixth Circuit has noted that 'a transcript intended as an aid to the jury inevitably becomes, in the minds of the jurors, the evidence itself' when the recording as a whole is unintelligible." *United States v. Maricle*, No. 6:09-16-S, 2010 WL 145124, at *2 (E.D. Ky. 2010) (quoting *United States*

*v. Segines*, 17 F.3d 847, 854 (6th Cir.1994)). In finding a recording to be intelligible, the court may allow the jury to use the transcript as a listening aid, so long as the court cautions the jury that the transcript is only to be used as a guide and is not itself evidence. *See e.g., United States v. Elder*, 90 F.3d 1110, 1130 (6th Cir. 1996), *United States v. Scarborough*, 43 F.3d 1021, 1024 (6th Cir. 1994).

## ANALYSIS

### I. Use of Telephone Recordings and Transcripts

Dunbar first charges that Government is planning to offer into evidence recordings of a number of intercepted telephone calls, as well as transcripts of the recordings and written interpretations of the recordings. Dunbar claims that the "phone calls are very difficult to hear because of the quality of recordings and very difficult to understand because of the language utilized by the speakers." DN 572 at 1. As a result of the poor audio quality, Dunbar states the recordings, the transcripts, and the interpretations are not relevant evidence under Federal Rule of Evidence 401, and therefore inadmissible. Alternatively, Dunbar states that even if these items were relevant evidence, the difficulty in comprehending the speakers and the derogatory language employed by the speakers on the recordings justifies exclusion pursuant to Federal Rule of Evidence 403. Finally, with regard to the interpretations of the recordings, Dunbar argues that in creating the interpretations, the law enforcement officials are inherently motivated to produce documents that will help to convict criminal defendants, and therefore they are unreliable. The Court has reviewed the telephone recordings in camera to determine their

3

accuracy.[1]  Although a few portions of the recordings are difficult to understand, these portions are not so substantial as to cause the Court to question the recordings' overall trustworthiness. The Court also compared the Government's transcripts to the recordings and found the transcripts to be accurate representations of the intercepted telephone calls.  Therefore the jury will be permitted to use the transcripts as a guide when listening to the recordings; nevertheless, the Court will provide the appropriate cautionary instructions at trial to guard against any potential prejudice or jury confusion that the transcripts may cause.

Regarding Dunbar's objection to the interpretations of the recordings, Government did not submit written or transcribed interpretations of the dialogue on the recordings.  Without further information before it, the Court cannot intelligently rule on the interpretations' admissibility.  However, to the extent that Government witnesses will testify as to their interpretations of alternative meanings of words used by the speakers in the recordings, the evidence would be admissible if introduced by a knowledgeable witness.  Dunbar's concerns over inherent bias in the law enforcement's interpretations may be addressed on the witness's cross examination.

**II. Use of Video Recordings, the Audio accompanying the Video Recordings, and Photographic Evidence**

Dunbar moves to exclude videos and photographs taken by authorities during the course of their investigation.  Dunbar does not dispute that he appears in a number of the videos and

---

[1] Specifically the Court reviewed Government Exhibit 10 (recordings of telephone calls intercepted on number 270-987-1947), Government Exhibit 15 (recordings of telephone calls intercepted on number 615-586-4849), Government Exhibit 19 (recordings of telephone calls made by Defendant Dwayne M. Joseph intercepted during his incarceration), Government Exhibit 20 (recordings of telephone calls to Dunbar on 9/11/2008), and Government Exhibit 25 (recordings of telephone calls to Dunbar).

4

photographs. Instead, he argues that neither the videos nor the photographs depict him participating in any illegal activity, are irrelevant evidence, and should thereby be excluded under Rule 401. He further states that the audio accompanying several of the videos is difficult to hear and is therefore also irrelevant evidence. In the alternative, Dunbar says that even if the items are relevant, they do not meet the standard set in Rule 403.

The Court has conducted an in camera review of the videos and photographs submitted by Government. Each of Government's exhibits is addressed below in turn.

### a. Government Exhibits 21 & 22 - Audio and Video Recordings of Undercover Purchase from Dunbar

Government alleges that Exhibit 22 portrays an undercover purchase of crack cocaine from Dunbar.[2] This claim however is impossible to verify. The camera angle throughout the video is directed almost entirely at the sky and a vehicle's windshield; consequently, the faces and actions of the video's participants are never fully visible. In addition, the accompanying audio is unintelligible, obscured by loud music emanating from the vehicle's stereo.

Notwithstanding the poor camera angle, the video would be proper evidence so long as it was introduced and explained by the testimony of one of the video's participants. The participant would be competent to identify both parties in the video as well as describe the transaction that allegedly took place. Where the quality of the video evidence is in question, a witness present at the video's creation is competent to testify about its subject matter; concerns about the quality of the recording go to the weight of the evidence and not its admissibility. *See e.g.*, *United States v. Lewis*, No. 07-CR-07, 2008 WL 5083131, at *9 (N.D. Ill. Nov. 25, 2008);

---

[2] Exhibit 21 is the sound recording from Exhibit 22's video.

*United States v. Moore*, No. 2:08-CR-16, 2008 WL 3896020, at *3-4 (E.D. Tenn. Aug. 19, 2008); *Stephens v. Crosby*, No. 8:03-CV-997T24, 2005 WL 1862723, at *4 (M.D. Fla. July 28, 2005).

The Court however finds that the audio that accompanies this video is unintelligible. The voices are indistinguishable and drowned out by the music in the foreground. Therefore, while Exhibit 22 may be offered into evidence, the sound recording in Exhibit 21 is inadmissible. Moreover, while Government may present Exhibit 22 at trial if introduced with the appropriate foundation, the audio must be disabled before it may be played for the jury. *See United States v. Moorman*, No. 90-5894, 1991 WL 66564, at *2 (6th Cir. Apr. 29, 1991) (district court may admit video recordings if unintelligible audio on video recording is removed prior to admission).

### b. Government Exhibits 26 & 27 - Video Recordings of Dunbar in Receiving Cash Payments

These videos allegedly show Dunbar receiving cash payments for narcotics. Although they are unfocused at times and do not contain any illegal activity in plain view of the camera, the videos are relevant evidence and not overly prejudicial to Dunbar. Presupposing the proper foundation at trial, participants in the videos would be permitted to detail the activity portrayed with any concerns as to the video's quality addressed on cross examination. *See supra* Section II(a). Finally, the audio for both videos is intelligible and therefore may be presented at trial along with the videos themselves.

### c. Government Exhibits 28, 29, & 30 - Video and Audio Recordings of Undercover Purchase from Dunbar

These videos clearly show an individual, allegedly Dunbar, exchange a plastic bag for money. The faces of the participants are plainly visible and the conversation between the

participants is intelligible. Accordingly, the Court finds that Dunbar's arguments are without merit; this evidence is relevant, not overly prejudicial, and therefore admissible.

### d. Government Exhibits 24, 31, 32, & 36 - Photographic Evidence

Finally Dunbar objects to the photographic evidence Government plans to offer. The photographs submitted by Government document both the execution of a search warrant at Defendant Rodney Edward Moore's residence as well as drugs seized following several controlled purchases in the course of the investigation. The Court finds the evidence to be relevant and non-prejudicial. Consequently, the photographs are admissible.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion is GRANTED IN PART AND DENIED IN PART. All Government Exhibits submitted to the Court for review are admissible except Exhibit 21. Also, if Exhibit 22 is presented at trial, it may only be shown without its accompanying audio.

IT IS FURTHER ORDERED that Government file under seal with the Court the exhibits it submitted for this in camera review along with any corresponding transcripts.